USCA1 Opinion

 

 June 14, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2142 UNITED STATES, Appellee, v. ARGERMIRO AYA, Defendant, Appellant. ____________________ ERRATA SHEET The opinion of this court issued on June 8, 1995 is amended as follows: On page 5, second line from the bottom, change the word "minor" to "minimal". June 8, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2142 UNITED STATES, Appellee, v. ARGERMIRO AYA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Selya and Lynch, Circuit Judges. ______________ ____________________ Elfrick Mendez Morales on brief for appellant. ______________________ Guillermo Gil, United States Attorney, Jacabed Rodriguez-Coss, ______________ _______________________ Assistant United States Attorney, and Jose A. Quiles-Espinosa, Senior _______________________ Litigation Counsel, on brief for appellee. ____________________ ____________________ Per Curiam. Argermiro Aya pleaded guilty to ___________ possession with intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1). The district court sentenced him to 57 months imprisonment. On appeal from this sentence, Aya raises only one issue. He contends that the sentencing court erred in reducing his offense level by only two levels, for his role in the offense as a "minor" participant, instead of by four levels, in recognition of his role as a "minimal" participant. See United States Sentencing Commission, ___ Guidelines Manual, 3B1.2 (November, 1993) ("Sentencing __________________ Guidelines"). We affirm. I. Background __________ The following facts are derived from the pre- sentence report ("PSR") to which neither party objected. Aya arrived in Puerto Rico at the Luis Munoz Marin International airport on May 14, 1994 on a flight from Panama City, en route to Madrid, Spain. U.S. Customs officials had identified Aya and two other passengers as fitting the profile of a narcotics trafficker. Custom agents separately stopped both Aya and another passenger, later identified as Hector R. Zamora-Velez, at the airport in Puerto Rico. Pat downs and subsequent searches revealed that Aya and Zamora were each wearing vests with pockets containing packages of cocaine. The cocaine found on Aya had a net weight of 4,503 grams or 4.5 kilograms and an average purity strength of 81%. The cocaine found on Zamora had a net weight of 4,339 grams and an average purity strength of 77%. According to the PSR, Zamora waived his rights at the time of his arrest and stated that he and Aya were travelling together. He said that a few weeks earlier he had been approached in Colombia by an (unnamed) person who asked him if he wanted to earn $5,000. That person provided Aya and Zamora with passports, airline tickets and a small amount of cash. The two allegedly obtained the cocaine and vests in Panama, where they boarded the plane for Spain, via Puerto Rico. Aya, in a later conversation with a probation officer, also stated that he was going to be paid $5,000 upon the delivery of the drugs in Spain. He claimed that he had agreed to smuggle the drugs because he needed the money to pay his father's medical bills. A two-count indictment charged Aya with possession with intent to distribute approximately 5.1 kilograms of cocaine (Count One) and importing the same quantity of cocaine (Count Two). After initially pleading not guilty, Aya changed his plea to guilty on Count One, pursuant to a plea agreement entered on July 26, 1994, in which the government agreed to move for dismissal of Count Two. The parties also agreed to stipulate that Aya was personally responsible for the possession with intent to distribute of 4.5 kilograms of cocaine. -4- A PSR was prepared, recommending a base offense level of 30 and a reduction of three levels for acceptance of responsibility and two levels for Aya's role in the offense as a "courier". See U.S.S.G. 3B1.2(b) (providing for a ___ decrease of two levels where the defendant is a "minor participant"). The total offense level of 25 and a criminal history category of I yielded a guideline sentencing range of 57 to 71 months. There were no objections to the PSR. At the sentencing hearing, the district court denied defendant's request for a four-level reduction for his role as a "minimal" participant in the offense. The reasons given, if any, are not included as part of the record. (Apparently, a transcript of the sentencing hearing was not prepared.) The sentencing court adopted the factual findings and guideline application in the PSR, however, which included a finding that Aya's role was as a courier. Although the statutory mandatory minimum sentence was five years, the district court agreed with defendant and the government that Aya met the criteria under 18 U.S.C. 3553(f).1 Therefore, the court imposed a prison sentence of 57 months.   ____________________ 1. Section 3553(f) provides that a Guideline sentence below the statutory minimum may be imposed for defendants with no more than 1 criminal history point, if certain other criteria are also met. -5- II. Discussion  __________ Section 3B1.2 of the Sentencing Guidelines provides for reductions in a defendant's offense level based upon his role in the offense: a decrease of 4 levels if the defendant was a "minimal participant" and a decrease of 2 levels if the defendant was a "minor participant." Commentary to the Sentencing Guidelines provides that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of 1B1.3 (Relevant Conduct), i.e., all conduct included under 1B1.3(a)(1)-(4), and not ____ solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. 3B1 (introductory commentary). In the commentary to 3B1.2, the four-level reduction for minimal participation is explained as follows: It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group.. . .  It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, . . . in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs. A two-level reduction for "minimal" participation is meant for a participant "who is less culpable than most other participants, but whose role could not be described as minor." U.S.S.G. 3B1.2 (commentary). -6- The defendant has the burden of proving entitlement to a downward adjustment pursuant to 3B1.2. United States _____________ v. Munoz, 36 F.3d 1229, 1238 (1st Cir. 1994), cert. denied, _____ _____ ______ __ U.S. __, 115 S. Ct. 1164 (1995). This court has recently emphasized that "[r]ole-in-the offense determinations are innately fact-specific. The court of appeals must, therefore, pay careful heed to the sentencing judge's views." United States v. Rostoff, No. 93-1376, slip op. at 29 (1st ______________ _______ Cir. April 24, 1995) (citation omitted). "Absent a mistake of law, a district court's finding as to whether a defendant was a minor or minimal participant will be reversed only if clearly erroneous." United States v. Neal, 36 F.3d 1190, 1211 _____________ ____ (1st Cir. 1994).  Aya argues that his role in the offense was that of a mere courier, a role that he argues is necessarily ___________ "minimal." This court has twice directly rejected that argument. In United States v. Lopez-Gil, 965 F.2d 1124, 1131 _____________ _________ (1st Cir. 1992), we held that "a defendant who is a drug courier is not entitled as of right to a reduction of the offense level as a minimal or minor participant." Lopez-Gil was arrested at the same airport in Puerto Rico, also en __ route to Spain, carrying suitcases containing cocaine. _____ Although the district court determined that Lopez-Gil "'acted as a courier and apparently had no proprietary interest in the cocaine as such,'" it refused to grant him even a two- -7- level reduction for minor involvement. Id. at 1126 (quoting ___ sentencing court). Nonetheless, this court affirmed the sentence. Id. at 1131. ___ Lopez-Gil cited to this Court's holding to the same _________ effect in United States v. Paz Uribe, 891 F.2d 396, 399 (1st ______________ _________ Cir. 1989) ("[E]ven if the court had found that Paz was only a courier, he would not automatically be entitled to a reduction."), cert. denied, 495 U.S. 951 (1990). Under these _____ ______ circumstances, the district court did not clearly err in sentencing Aya as a "minor" rather than a "minimal" participant.  Appellant's sentence is therefore affirmed. See ________ ___ Loc. R. 27.1. -8-